UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

```
------------------------------------------------)
ROBERT BENNETT                                   )
                                                 )
1938 Drew Street                                 )
 Annapolis, Maryland 21401                       )
                      Plaintiff,                 )
                                                 )
LEILA JOSEPH                                     )
                                                 )
627 Vermont Street                               )
 Brooklyn, NY 11207                              )
                      Plaintiff,                 )      Civil Action No. _____
                                                 )
DELORES J. MOORE                                 )
                                                 )
204 Fifth Street                                 )
Covington, IN 47932-1229                         )
                                                 )
                      Plaintiff,                 )
                                                 )
       vs.                                       )
                                                 )
SHAUN DONOVAN, in his capacity as                )
SECRETARY OF THE                                 )
UNITED STATES DEPARTMENT OF                      )
HOUSING AND URBAN DEVELOPMENT,                   )
                                                 )
451 7th Street S.W.                              )
Washington, DC 20410                             )
                                                 )
                      Defendant                  )
------------------------------------------------)
```

## COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF

Plaintiffs Robert Bennett, Leila Joseph, and Delores J. Moore, bring this action

against Shaun Donovan, Secretary of the U. S. Department of Housing and Urban Development

("HUD").

1

## INTRODUCTION

1.      This case challenges certain actions by HUD in regard to its Home Equity

Conversion Mortgage ("HECM") or reverse mortgage program that changed the payment

obligations for reverse mortgages and violated statutory protections for spouses.

2.      Through the HECM program, Congress enacted statutory protections for reverse

mortgage borrowers, explicitly stating that its purpose was "to meet the special needs of elderly

homeowners by reducing the effect of the economic hardship caused by the increasing costs of

meeting health, housing and subsistence needs at a time of reduced income." 12 U.S.C. § 1715z-

20(a). HUD has undermined these statutory purposes and violated the plain language of the

HECM statute in several ways.

3.      After 17 years of explaining and promoting the HECM reverse mortgage as a so

called "non-recourse" loan on which a borrower or his or her heirs would never owe more than

the home was worth, HUD changed course in December 2008.  Without providing notice or the

opportunity for comment, HUD changed this policy in two important ways.  First, in Mortgagee

Letter 2008-38 ("ML 2008-38")[1]HUD stated that the "non-recourse" provision only applies if the

property is sold.  Under this new interpretation, an heir – including a surviving spouse who was

not named on the mortgage – must pay the full mortgage balance to keep the home, even if it

exceeds the value of the property.  Often the surviving spouse or other heir cannot pay off the

balance in full, especially where the property is "underwater"— i.e., it is now worth less than the

outstanding loan amount.  In such cases, elderly widows and widowers are being forced from

their homes or required to pay amounts that are greater than was promised when the loan was

taken out.

---

[1] Mortgagee Letter 2008-38, December 5, 2008, is as attached Exhibit 1.

4.    Second, through ML 2008-38, HUD also changed its rule that allowed the borrower or his or her estate to sell the secured property to anyone for 95%-100% of its current appraised value to satisfy the HECM. 24 C.F.R. §§ 206.123(c); 206.125(a)(2) &(c).  Now, for the first time, HUD required that if a HECM is paid off with the proceeds of a sale of the property at any amount less than the full mortgage balance, the sale must fit HUD's new definition of an "arm's length transaction."  The effect of this is to allow a stranger (indeed anyone in the world) to purchase the property for 95% of its fair market value but to require spouses or heirs to repay the full mortgage balance.  By this change, HUD abrogated existing mortgage contracts between borrowers and lenders, which allow the property to be sold to anyone for the lesser of the balance or 95% of the appraised value.

5.    In addition to these new interpretations, HUD's implementation of the HECM program violates an explicit statutory provision that protects spouses not named on the mortgage from displacement. The HECM statute states that HUD cannot insure a HECM mortgage unless the right to demand repayment does not occur until the death of the homeowner, sale of the property or other similar terminating event. 12 U.S.C. § 1715z-20(j).  The provision explicitly extends this protection from displacement to "homeowners," which the statute defines to "include the spouse of a homeowner," without regard to whether the spouse is named on the mortgage. *Id.*

6.    HUD has never complied with this statutory requirement.  In fact, its regulations only protect individuals who are named on the HECM, not unnamed spouses.

7.    These actions by HUD have led to hundreds of foreclosures on the homes of elderly widows and widowers, and have resulted or will result in their eviction from those homes.

3

8.     Plaintiffs bring this action under the Administrative Procedure Act, 5 U.S.C. §
551 *et seq.*, for judicial review of final agency actions by HUD.  Plaintiffs challenge HUD's
promulgation and reinterpretation of rules governing the HECM program and its violation of the
statutory protection for spouses. Plaintiffs seek a declaration that the new rules and
interpretations are unlawful; a declaration that HUD's failure to protect spouses from
displacement is illegal and exceeds its authority; and preliminary and permanent injunctions
barring HUD from enforcing its unlawful rules or otherwise directing lenders to use them as a
basis for foreclosing on the homes of older homeowners.

### THE PARTIES

9.     Plaintiff Delores Moore, a 79-year old widow, is a citizen of Indiana, residing at
204 Fifth Street, Covington, Indiana.

10.     Plaintiff Leila Joseph, a 77-year old widow, is a citizen of New York, residing at
627 Vermont Street, Brooklyn, New York.

11.     Plaintiff Robert Bennett, a 69-year old widower, is a citizen of Maryland, residing
at 1938 Drew Street, Annapolis, Maryland.

12.     Defendant Shaun Donovan is the Secretary of the Department of Housing and
Urban Development, a cabinet-level federal agency.  HUD's headquarters is at 451 7th Street
S.W., Washington, DC, 20410.

### JURISDICTION AND VENUE

13.     This Court has subject matter jurisdiction under 28 U.S.C. § 1331 and 5 U.S.C.
§ 702.

14.     Venue is proper in this Court under 28 U.S.C. § 1391(e).

### NATURE OF THE CASE

#### The HECM Program

15.     The HECM program was originally authorized by the Housing and Community

Development Act of 1987, Pub. L. No. 100-242, 101 Stat. 1815 (1988); 12 U.S.C. § 1715z-20

("HECM statute"). Under the program, the United States government insures reverse mortgages

originated by private lenders.

16.     A reverse mortgage is a loan that allows older homeowners to convert part of the

equity in their homes into cash. It is the "reverse" of a traditional mortgage, in which the

borrower repays the borrowed sum on a monthly basis: reverse mortgage borrowers receive

money in exchange for their home equity. Borrowers can choose to receive the loan proceeds in

a lump sum, on a monthly basis, or they can draw on a line of credit periodically as needed.

Reverse mortgage borrowers are not required to make monthly or other periodic payments to

repay the loan.  Instead, the loan balance increases over time, and the loan does not become due

and payable until one of a number of defined events occurs.  12 U.S.C. § 1715z-20(j).

17.     The HECM statute states that the loan becomes "due and payable" upon the death

of the homeowner(s), sale of the property, or other events to be determined by HUD.  12 U.S.C.

§ 1715z-20(j).  HUD's regulations add to this list of "due and payable" events the mortgagor's

change of principal residence; the failure to perform an obligation of the mortgage, and the

mortgagor's failure to occupy the property for more than 12 consecutive months because of

physical or mental illness.  24 C.F.R. § 206.28(c)(2).

18.     The HECM program was first created as a pilot program that was permitted to

insure up to 2,500 reverse mortgages.  Since then, Congress has made the program permanent

5

and has greatly expanded it.  From the program's inception through December 2010, HUD has

insured more than 640,000 HECMs. Of these, over 500,000 HECMs are still outstanding.[2]

19.   HUD administers the HECM program, and issued its governing regulations.  24

C.F.R. § 206.1, *et seq.* Interpretations of the HECM regulations are provided in HUD's

Handbook, 4235.1 REV-1 (1994), Home Equity Conversion Mortgages ("HECM Handbook"),

and in a series of letters directed to private lenders participating in the program.

20.   Recognizing that reverse mortgages are complex financial products, and that

elderly homeowners considering these mortgages may lack sophistication, Congress required

that any mortgage insured through the program contain certain protections for borrowers. 12

U.S.C. § 1715z-20.

21.   Among the protections is one that effectively prohibits a reverse mortgage lender

from seeking a deficiency judgment against a borrower if the proceeds of a sale of the mortgaged

property are insufficient to repay the loan. 12 U.S.C. § 1715z-20(d)(7).  The purpose of this

provision is to relieve older homeowners and their heirs from potentially significant personal

liability for reverse mortgage balances that can escalate over time to greatly exceed the home's

value.  The lender, and the government as an insurer, take the risk that the loan balance might

exceed the value of the home, not the homeowner.  For this insurance the borrower is charged a

fee of 2% of the value of the property at closing and additional monthly premiums of 0.5% of the

current loan balance. 24 C.F.R. § 206.105.

22.   Congress also protected elderly homeowners from displacement.  The HECM

statute states that "[t]he Secretary [of HUD] may not insure a home equity conversion mortgage

under this section unless such mortgage provides that the homeowner's obligation to satisfy the

---

[2] *See Total HECM Cases Endorsed for Insurance by Fiscal Year of Endorsement and Borrower Characteristics, November 30, 2010,* found at http://www.hud.gov/offices/hsg/rmra/oe/rpts/hecm/hecmmenu.cfm.

loan obligation is deferred until the homeowner's death, the sale of the home, or the occurrence of other events specified in regulations of the Secretary." 12 U.S.C. § 1715z-20(j). This provision states that "[f]or purposes of this subsection, the term 'homeowner' includes the spouse of a homeowner." *Id.*

23.     Recognizing the complex nature of the reverse mortgage product, the HECM statute has always required specific disclosures about the rights, limited liability, costs and other terms of the mortgage, and has required that homeowners receive counseling before taking out a loan that HUD would insure under the program. 12 U.S.C. § 1715z-20(e) & (f). Throughout the history of the HECM program, HUD has not provided this counseling directly, but has approved private organizations to provide it.

### HUD's Unilateral Change in the Longstanding Definition of "Non-Recourse"

#### Background of Non-Recourse Rule

24.     From the inception of the HECM program until December 2008, HUD's public position was that a reverse mortgage insured under the program was "non-recourse."

25.     Specifically, the HECM Handbook, in effect since 1994, states: "The HECM is a 'non-recourse' loan. This means that the HECM borrower (or his or her estate) will never owe more than the loan balance or the value of the property, whichever is less." Handbook § 4235.1 REV-1.

26.     This definition of "non-recourse" was relied upon by HECM borrowers (as well as lenders) as defining their obligations under the loan.

27.     For the 18 years from the inception of the program until 2006, HUD officials and staff working on the HECM program reviewed training materials and attended various trainings for HECM counselors. The training materials stated:

There is a "non-recourse" limit on the borrower's repayment obligation. This important consumer safeguard means that the total amount owed by the borrower can never exceed the value of the home at the time the loan becomes due and payable. In seeking repayment, the lender does not have recourse to anything other than the home's value.

1.  Even if the loan balance grows to be greater than the home's future value, the borrower's debt is limited by the value of the home.

2.  The non-recourse feature protects the borrower and the borrower's estate and heirs from "deficiency judgments," that is, from being required to pay back more than the home's value.[3]

39.   During that 18 year period, this widely shared understanding of "non-recourse" was repeatedly affirmed by HUD officials and staff, and on HUD's website, which stated:

Unlike ordinary home equity loans, a HUD reverse mortgage does not require repayment as long as the home is the borrower's principal residence. Lenders recover their principal, plus interest, when the home is sold. The remaining value of the home goes to the homeowner or to his or her survivors. You can never owe more than your home's value.[4]

40.   This rule was also publicized by HUD's partner and primary HECM investor, Fannie Mae. Originally published in September 1989 and then posted on its website in August 2004, Fannie Mae's "Reverse Mortgages Q & A" states:

Q:   Will my heirs owe anything to the mortgage lender if I die?

A:   Upon your death, the loan balance, consisting of payments made to you plus accrued interest and mortgage insurance premiums, becomes due and payable. Your heirs may repay the loan by selling the home, or by refinancing the mortgage so that

---

[3] Home Equity Conversion Mortgage (HECM) Counseling materials, May 2006, attached as Exhibit 2.

[4] http://web.archive.org/web/20080411055741/http://www.hud.gov/offices/hsg/sfh/hecm/hecmabou.cfm ("About HECM" page updated 14 July 2006, saved on archive.org on 11 April 2008), attached as Exhibit 3.

they may keep the home. If the loan exceeds the value of your property, your heirs will owe no more than the value of the property. FHA insurance will cover any balance due the lender. No additional financial claims may be made against your heirs or estate.[5]

41.    From 1987 to 2006, HUD's public pronouncements, informational pieces and other communications were clear that, for purposes of the HECM program, "non-recourse" meant that a borrower or his or her heirs would never owe more than the value of the property.

**HUD Changes Non-Recourse Rule**

42.    During a training session for HECM counselors in February 2006, Sally Bene, an employee of HUD's loan servicing division in Tulsa, Oklahoma, stated that her office required a deceased borrower's estate to repay the full balance on the mortgage if the heirs of the borrower wished to retain the property, even if this balance exceeded the home's value. This announcement was a total surprise to attendees because it was contrary to the express text of the HECM Handbook and other official HUD publications, as well as the settled expectations of all borrowers, lenders, counselors, and other parties involved in reverse mortgages.

43.    Subsequently, clarification was sought from Margaret Burns, who was at that time the Director of the Office of Single Family Program Development at HUD. Ms. Burns, in turn, sought an opinion from HUD's Office of General Counsel.

44.    In a memorandum dated July 25, 2007 ("July 25th Memorandum")[6], an attorney in HUD's General Counsel's Office opined that the definition of "non-recourse" in the HECM Handbook was "not quite accurate," and that "non-recourse" meant only that a lender could not

---

[5] Fannie Mae Home Equity Conversion Mortgage Consumer Fact Sheet, September, 1989, attached as Exhibit 4-1. *See also*, Exhibit 4-2, Fannie Mae Home Equity Conversion Mortgage Consumer Fact Sheet, August, 2004.
[6] July 25, 2007 Memorandum, attached as Exhibit 5.

seek a deficiency judgment after foreclosing on a reverse mortgage. Therefore, according to the Memorandum, a deceased borrower's spouse or heirs must repay the entire mortgage balance to retain the property.

45.     Nearly 17 months later, HUD issued a new interpretation of the meaning of "non-recourse" through ML 2008-38, addressed to approved mortgagees and single family servicing managers.

46.     Through ML 2008-38, issued December 4, 2008, HUD informed the lenders of what it described as a "clarification" of certain rules governing the HECM program, effective immediately. HUD issued ML 2008-38 without providing notice or the opportunity for comment.

47.     ML 2008-38 "clarified" that the meaning of "non-recourse" in the HECM context is "simply that if the borrower (or estate) does not pay the balance when due, the mortgagee's remedy is limited to foreclosure and the borrower will not be personally liable for any deficiency resulting from the foreclosure."

### HUD's Imposition of a New Rule Requiring Arm's-Length Sales

48.     The July 25 Memorandum also acknowledged the existence of what it described as a "loophole" in the HECM program rules that allowed an elderly homeowner or his or her estate to sell the property to whomever he or she chose, and to repay the reverse mortgage for 95 percent of the property's value.

49.     Under HUD's HECM regulations – in effect at that time and still in effect today— the HECM borrower, or borrower's estate or personal representative (if the borrower is deceased), always has the option of selling the property subject to the mortgage to repay the loan, either prior to or at the time it becomes due and payable. 12 C.F.R. § 206.123(b); § 206.125(c).

        a.      Whether or not the mortgage is due and payable, the HECM regulations provide that the reverse mortgage can

be satisfied by selling the property for the lesser of the mortgage balance or the appraised value of the property. 12 C.F.R. § 206.125(c).

b.    If the mortgage is due and payable, the HECM regulations provide that the reverse mortgage can be satisfied by selling the property for the lesser of the mortgage balance or 95 percent of the appraised value of the property. *Id.*

50.    The standard HECM Mortgage also states that when the loan becomes due and payable, the lender may not commence foreclosure until 30 days after it has given the homeowner notice that he or she may: (1) repay the HECM for the full balance owing on the mortgage; (2) sell the property for the lesser of the loan balance or 95% of its appraised value; or (3) convey the property to the lender by a deed in lieu of foreclosure. HECM Mortgage, ¶ 9(c).[7]

51.    The HECM statute, regulations, and standard HECM Mortgage create no category of purchasers who are ineligible to purchase under the terms set forth in 12 C.F.R. § 206.125(c) or according to paragraph 9(c) of the Mortgage. Prior to issuance of ML 2008-38, no provision of the HECM statute, regulations, Handbook, or any other HUD interpretation prohibited a spouse or an heir of a deceased HECM borrower from purchasing the reverse mortgaged property under the terms set forth in 12 C.F.R. § 206.125(c) and ¶ 9 of the HECM Mortgage.

52.    As a result of the alleged "loophole" identified in the Memorandum, in addition to changing the meaning of "non-recourse," ML 2008-38 imposed a new requirement that any sale of a property subject to a HECM for less than the full mortgage balance must be an "arm's-length sale." The effect of this new rule is to allow a stranger to purchase the property for 95% of its fair market value but to deny the borrower's spouse or heirs the ability to do so.

---

[7] Standard HECM Mortgage, attached hereto as Exhibit 6.

11

## HUD's Contravention of the Anti-Displacement Provision of the HECM Statute

53.     The HECM statute's anti-displacement provision states that HUD may insure a reverse mortgage only if "such mortgage provides that the homeowner's obligation to satisfy the loan obligation is deferred until the homeowner's death, the sale of the home" or other occurrences to be defined by HUD. 12 U.S.C. § 1715z-20(j). For purposes of this subsection (j), "homeowner" specifically includes the homeowner's spouse, so that the death of a spouse – even one who is not named on the HECM – does not trigger the obligation to pay off the mortgage. *Id.*

54.     The legislative history on the passage of the HECM legislation confirms the plain meaning of this statutory provision. The Senate Report on the legislation states that HECM mortgages shall "defer[ ] any repayment obligation until death of the homeowner *and* the homeowner's spouse . . ." (emphasis added).[8]

55.     HUD has never implemented the plain meaning of the anti-displacement statutory mandate. Although the standard HECM Mortgage states that it "shall be governed by Federal law and the law of the jurisdiction in which the property is located," neither the HECM regulations nor the standard Note and Mortgage include the protection for spouses found in 12 U.S.C. § 1715z-20(j).

56.     In fact, HUD has acted in direct contravention of this statutory provision. The statute, 12 U.S.C. §1715z-20(j), provides protection for "homeowners" defined to include the spouse of a homeowner, without regard to whether the spouse is a signatory to the mortgage. The regulations, in violation of the statute, substitute the term "mortgagor" for "homeowner" and

---

[8] Report 100-21 by the Senate Committee on Banking, Housing and Urban Affairs accompanying S. 825, 100th Congress, Section 135 (reporting on Subsection 254(j)), attached hereto as Exhibit 8.

"spouse," and state that the duty to satisfy the mortgage occurs when the *"mortgagor"* dies and

the property is not the principal residence of at least one surviving *mortgagor. . .* " 24 C.F.R.

§ 206.29(c) (emphasis added).

57.   Compounding the problem, the regulations define "mortgagor" as "each original

borrower under a mortgage . . . [and] does not include the successors or assigns of a borrower."

24 C.F.R. § 206.3. This definition directly contradicts the HECM statute's definition of

mortgagor to include *"the original borrower under a mortgage and his successors and assigns."*

12 U.S.C. § 1715z-20(b); 12 U.S.C. § 1707.

58.   The HUD regulations' substitution of the term "mortgagor" for "homeowner,"

and their adoption of a definition of "mortgagor" that is contrary to and more limited than the

HECM's statutory definition of "mortgagor," makes the HECM "due and payable" upon the

death of a borrowing spouse. Thus, the regulations remove a key statutory protection for the

surviving spouse who is not named on the HECM, as provided by 12 U.S.C. § 1715z-20(j).

## PLAINTIFFS' REVERSE MORTGAGE TRANSACTIONS

### Delores Jean Moore

59.   On December 2, 2005, Plaintiff Delores Jeanne Moore's husband, Harlan E.

Moore, signed a reverse Note and Mortgage with Financial Freedom Senior Funding Corporation

("Financial Freedom").

60.   The property subject to the Mortgage was the Moores' home at 204 Fifth Street,

Covington, Indiana.

61.   Although Mrs. Moore resided in the mortgaged property, her name was not on the

deed because her husband had owned the property prior to their marriage in 2001, and did not

add her as an owner after the marriage. Accordingly, she was not listed as a borrower on the HECM Note or Mortgage.

62.     On or about September 21, 2005, prior to consummation of the HECM Mortgage and Note, Mr. and Mrs. Moore went through HUD-mandated counseling with Stacy Stuber of Momentive Consumer Credit Co. of Indianapolis, Indiana. During the counseling session, Mr. Moore specifically asked the counselor what would happen if he were to die before his wife. The counselor indicated that, under those circumstances, Mrs. Moore could retain the house by paying off the loan balance but would never owe more than the fair market value of the property.

63.     HUD insured the reverse mortgage taken out by Mrs. Moore's husband. HUD charged Mr. Moore an initial mortgage insurance premium of $2160 -- 2% of the value of the property -- and assesses additional premiums of 0.5% of the loan balance -- approximately $38.00 -- each month.

64.     Mr. Moore died on April 27, 2008, and Mrs. Moore became the personal representative of her husband's estate.

65.     Mrs. Moore is the sole heir of her deceased husband.

66.     Under HUD regulations -- challenged in this action -- the reverse mortgage taken out by Mr. Moore became due and payable upon his death. 12 C.F.R. § 206.27(c).

67.     After being notified of Mr. Moore's death, Financial Freedom sent Mrs. Moore a document titled "Repayment Notice Home Equity Conversion Mortgage," stating that Mr. Moore's death had triggered the obligation to repay the mortgage. The Repayment Notice stated that HUD required Financial Freedom to provide information about the repayment of "your Home Equity Conversion Mortgage." The Notice stated: "If the borrower (or the borrower's estate) believes the value of the property is less than the outstanding balance, at the borrower's

14

request and expense, the servicer will arrange for an appraisal, and the debt may be satisfied by paying 95 percent of the appraised value."

68.     In December 2008, Mrs. Moore requested that the property be appraised by the servicer of the mortgage.  As of July 2009, the appraiser determined that the fair market value of the property was $85,000, which was approximately $4,000 less than the $89,000 balance on the mortgage at that time.

69.     On August 7, 2009, Financial Freedom filed an action in the Fountain County Circuit Court in Indiana, seeking foreclosure on and possession of the Moore property.  In this action, Financial Freedom named as defendant Mrs. Moore in her capacity as personal representative.

70.     Believing she could not be liable for any amount in excess of her home's value, in October 2009, Mrs. Moore, through an attorney, offered to settle the foreclosure action with a payment of the property's appraised value of approximately $85,000.  This offer was rejected.

71.     In December 2009, Mrs. Moore, through an attorney, filed an Answer to the foreclosure complaint as both personal representative of her husband's estate and as occupant of the property.

72.     In February 2010, Mrs. Moore made a second offer to settle for $80,750, which was 95% of the then-appraised fair market value, in accordance with the terms of the Repayment Notice Mrs. Moore had received from Financial Freedom.

73.     Citing HUD directives that a "short" payoff was not an option for family members/heirs to the estate, Financial Freedom rejected Mrs. Moore's offer.

74.     The foreclosure action against Mrs. Moore is still pending in the Fountain County Circuit Court.

75.     Mr. Moore's reverse mortgage did not include the protection from spousal displacement provision required by 12 U.S.C. § 1715z-20(j).

76.     If HUD had not unilaterally altered the statutory anti-displacement provision, the mortgage on Mrs. Moore's home would not be due and payable until after her death, sale of the property, or other event triggering the repayment obligation under the HECM regulations, and would preclude the current foreclosure action against her home.

77.     ML 2008-38 was not merely a clarification but constituted a substantial and unilateral change in HUD's position on the meaning of the term "non-recourse" with regard to the reverse mortgage taken out by Mr. Moore.

78.     Under the new "non-recourse" rule articulated in ML 2008-38, which was applied retroactively to the Moore mortgage, Mrs. Moore was denied the ability to pay off the mortgage for the lesser of the loan balance or the appraised value.

79.     HUD's change to the arm's-length sale rule abrogated the terms of the Mortgage contract between Mr. Moore and Financial Freedom.

80.     The effect of ML 2008-38's arm's-length rule is that Mrs. Moore can obtain title to the property only by purchasing it for the full balance owed on her husband's reverse mortgage -- approximately $92,000. Yet, as the personal representative of her husband's estate, she may sell it for as little as 95 percent of the appraised value – approximately $81,000 -- if she sells the property to a stranger.

81.     The change in HUD's interpretation of "non-recourse" occurred after Mr. Moore signed the reverse mortgage on the Moores' home. Neither Mr. nor Mrs. Moore ever received a copy of ML 2008-38 or any other notice of its unilateral change in terms.

82.     Although Mrs. Moore has received no additional funds from the HECM since her husband's death, the mortgage balance owed increases each month with the addition of interest, mortgage insurance, and servicing fees.  The current balance is approximately $92,000, $7,000 more than the appraised fair market value of the property.

83.     Mrs. Moore is an elderly woman of limited means for whom displacement or repayment of the full mortgage balance will cause substantial hardship.

### Leila Joseph

84.     On April 18, 2009, Plaintiff Leila Joseph's husband, Albert Joseph, signed a reverse Note and Mortgage with MetLife Home Loans ("MetLife").

85.     The property subject to the Mortgage was the Josephs' home at 627 Vermont Street, Brooklyn, NY.

86.     Mrs. Joseph and her husband purchased the property in 1980 and owned it jointly from 1980 to 2005.  In early 2005, they removed Mr. Joseph from the deed because he had debts which, he believed, made the house vulnerable to creditors.  They transferred ownership of the house to Mrs. Joseph and their son, Crawford Joseph, in March 2005.

87.     Mr. Joseph was diagnosed with Alzheimer's disease in August 2006.

88.     In 2009, the Josephs were behind in their mortgage payments and were receiving constant calls from telemarketers selling mortgages.  In response to one of the calls, Mr. Joseph met with mortgage broker Doug Vairo ("Vairo"), a representative of First Franklin Financial, d/b/a/ Senior Funding Group on or about February 1, 2009.

89.     Vairo came to the Josephs' home. He advised them that if they transferred title to the property to Mr. Joseph, they would be eligible for a reverse mortgage that would generate monthly income to them.

90.     Mrs. Joseph expressed concern to Vairo about the wisdom of this advice and asked what would happen if her husband died before her.  Vairo told them that the monthly check would be greater if it was titled in Mr. Joseph's name; that Mrs. Joseph's name would go back on the deed at the end of two years and that, if Mr. Joseph died in the meantime, Vairo would work with her to be sure she was able to stay in her home.

91.     Despite the fact that Mr. Joseph suffered from dementia, Vairo arranged for Aliya Eddington of Springboard Non Profit Consumer Credit Management, Inc. to do the HUD-mandated counseling with him on February 5, 2009.  Although Mr. Joseph was not on the deed to the property at that time, the Counseling Certificate lists him as the sole homeowner.  The counseling session took place over the telephone.  Mrs. Joseph was not asked to participate.

92.     In March-April 2009, when the deed transfer to Mr. Joseph and the reverse mortgage were executed, Mr. and Mrs. Joseph were ages 82 and 76 respectively.

93.     HUD insured the reverse mortgage taken out by Mr. Joseph.  On information and belief, HUD charged Mr. Joseph an initial mortgage insurance premium of $8,750, or 2% of the value of the property -- and assesses additional premiums of 0.5% of the loan balance -- approximately $150 -- each month.

94.     Mr. Joseph died on August 30, 2009.

95.     While Mrs. Joseph is aware that some of the HECM proceeds were paid, she is unaware of Mr. Joseph's ever receiving monthly income from it.

96.     Mr. Joseph died intestate.  Mrs. Joseph and their children and grandchildren are his heirs.

97.     Under HUD regulations -- challenged in this action -- the reverse mortgage taken out by Mr. Joseph became due and payable upon his death.  12 C.F.R. § 206.27(c).

18

98.     MetLife sent a letter dated October 9, 2009 to the Josephs' home, addressed to "Executor." The letter stated that the reverse mortgage was "technically in default, due to the death of the borrower" and presented various "options" to the estate to satisfy the mortgage. Among the options listed was: "The mortgage can be released and no deficiency judgment filed if the property *sells* for at least 95% of the appraised value, even if the outstanding loan balance is greater than the current appraised value." (Emphasis in original.) As of the date of the letter, the balance on the reverse mortgage was approximately $390,732.

99.     The current value of the property is unknown.  Zillow, a real estate valuation website, currently values it at $397,000.

100.    In early 2010, counsel for Mrs. Joseph contacted MetLife regarding Vairo's misrepresentations and Mr. Joseph's lack of capacity, and provided medical records documenting Mr. Joseph's condition.  In May 2010, MetLife informed Mrs. Joseph that it intended to initiate foreclosure proceedings on the property in September 2010.

101.    On September 28, 2010, MetLife sent Mrs. Joseph a letter stating that the reverse mortgage was processed "diligently," that Mr. Joseph "acted on his own behalf" in undertaking the reverse mortgage, and that it was pursuing its repayment options.

102.    Mrs. Joseph is currently defending a foreclosure action in the Supreme Court of Kings County, New York.

103.    Mr. Joseph's reverse mortgage did not include the protection from spousal displacement provision required by 12 U.S.C. § 1715z-20(j).

104.    If HUD had not unilaterally altered the statutory anti-displacement provision, the mortgage on the Josephs' home would not be due and payable until after Mrs. Joseph's death,

sale of the property, or other event triggering the repayment obligation under the HECM statute, and would preclude any foreclosure action against her home.

105.    Although Mrs. Joseph has received no additional funds from the HECM since her husband's death, the mortgage balance owed increases each month with the addition of interest, mortgage insurance, and servicing fees.  The current balance is approximately $379,000.

106.    Mrs. Joseph is an elderly woman of very limited means for whom displacement and/or repayment of the full mortgage balance will cause substantial hardship.

### Robert T. Bennett

107.    On December 17, 2008, Plaintiff Robert Bennett's wife, Ophelia Bennett, signed a reverse Note and Mortgage with James B. Nutter & Co. ("Nutter ")

108.    The property subject to the Mortgage was the Bennetts' home at 1938 Drew Street, Annapolis, MD.

109.    Mr. and Mrs. Bennett married in 1976 and owned their home jointly since approximately 1981.

110.    In 2008, the Bennetts began receiving calls from mortgage telemarketers suggesting that they refinance their mortgage into a reverse mortgage.  At that time, the Bennetts had a mortgage balance of approximately $250,000 on their home.  While the mortgage was not in arrears, they were struggling to make ends meet.

111.    On or about September 1, 2008, Mrs. Bennett agreed to meet with Freddie Archable, a mortgage broker from 1st Continental Mortgage.  Archable came to the Bennetts' home and explained that a reverse mortgage would allow them to stay in the house with no payments for the rest of their lives.

112.    The Bennetts applied for the reverse mortgage without knowing that Mr. Bennett's name would be removed from the deed.

113.    Archable set up an appointment for the Bennetts to receive the HUD-mandated housing counseling with Willie Gardner of the National Foundation for Debt Management. The counseling was conducted over the telephone on or about September 8, 2008. Mr. Bennett is listed on the Counseling Certificate as a "homeowner." The counselor never told Mr. Bennett that his name would be removed from the deed to the house.

114.    In December 2008, when the deed transfer to Mrs. Bennett and the reverse mortgage were signed, Mr. and Mrs. Bennett were ages 66 and 76 respectively.

115.    HUD insured the reverse mortgage taken out by Mrs. Bennett.  HUD charged Mrs. Bennett an initial mortgage insurance premium of $7,500, or 2% of the value of the property -- and assesses additional premiums of 0.5% of the loan balance -- approximately $120 -- each month.

116.    Mrs. Bennett died the following month, on January 26, 2009. Mr. Bennett was appointed personal representative of his wife's estate.

117.    Mrs. Bennett died intestate. Eight children from her previous marriage and Mr. Bennett are her heirs.

118.    Under HUD regulations – challenged in this action -- the reverse mortgage taken out by Mrs. Bennett became due and payable upon her death. 12 C.F.R. § 206.27(c).

119.    On March 29, 2010, Nutter sent a letter through counsel addressed to "Occupant/Tenant/Owner" stating its intent to foreclose on the house within 30-60 days.

120.     In December, 2010 Mr. Bennett, through counsel, asserted his right to be protected from displacement and to purchase the property for 95% of its appraised value.  Nutter denied these rights and explicitly cited ML 2008-38 as a HUD directive it was bound to follow.

121.     Mr. Bennett is currently defending a foreclosure action in Circuit Court for Anne Arundel County, Maryland.  On December 14, 2010, Nutter filed an Order to Docket the Foreclosure of the Bennett home.  A sale of the property was set to take place on February 15, 2011. The order allowing the sale was vacated after Mr. Bennett's counsel filed an Emergency Motion for Stay and to Dismiss the foreclosure.

122.     Mrs. Bennett's reverse mortgage did not include the protection from spousal displacement provision required by 12 U.S.C. § 1715z-20(j).

123.     If HUD had not unilaterally altered the statutory anti-displacement provision, the mortgage on the Bennetts' home would not be due and payable until after Mr. Bennett's death, and Mr. Bennett would not be facing foreclosure and eviction.  12 U.S.C. § 1715z-20(j).

124.     Although Mr. Bennett has received no additional funds from the HECM since his wife's death, the mortgage balance owed increases each month with the addition of interest, mortgage insurance, and servicing fees.  The current balance is approximately $295,600.  A recent appraisal valued the property at $200,000.

125.     Mr. Bennett is an elderly man of limited means for whom displacement or repayment of the full mortgage balance will cause substantial hardship.

## CLAIMS

### COUNT ONE

#### HUD's Violation of the Administrative Procedures Act's
#### Notice and Comment Requirement, 5 U.S.C. § 553

126.   Plaintiffs incorporate by reference as if fully set forth herein the allegations contained in paragraphs 1 thorough 125 above.

127.   The Administrative Procedures Act ("APA") requires agencies of the United States government to provide notice and the opportunity for interested persons to comment prior to the issuance of a rule. 5 U.S.C. § 553. When a federal agency adopts an interpretation of a rule that is inconsistent with its existing interpretation, the APA requires it to provide notice and the opportunity for interested persons to comment prior to the issuance of the new interpretation. *E.g., Alaska Prof'l Hunters Ass'n v. FAA*, 177 F.3d 1030 (D.C. Cir. 1999).

128.   HUD violated the APA by failing to provide notice and the opportunity for comment prior to issuing ML 2008-38 in that ML 2008-38's interpretation of "non-recourse" was not a clarification of an existing interpretation of the HECM statute or regulations but a new and different interpretation that is inconsistent with the plain definition of "non-recourse" in HUD's Handbook and other official publications.

129.   HUD's issuance of ML 2008-38 further violated the APA in that it substantively altered the rules by restricting the ability of spouses and other heirs to purchase the HECM secured property for 95% of its appraised value when the mortgage becomes due and payable.

130.   Accordingly, HUD violated the Administrative Procedures Act, 5 U.S.C. § 553. Plaintiffs have been damaged by HUD's illegal actions.

23

## COUNT TWO

### HUD's Retroactive Rulemaking Violated the HECM Statute, 12 U.S.C. § 1715z-20(e) & (f), and the APA, 5 U.S.C. § 551

131.    Plaintiffs incorporate by reference as if fully set forth the allegations of paragraphs 1-130 above.

132.    The APA defines a "rule" as "an agency statement of general or particular applicability and future effect." 5 U.S.C. § 551(5).

133.    The HECM statute requires that prospective HECM borrowers receive full disclosure informing them "that the liability of the homeowner is limited and explaining the homeowner's rights, obligations, and remedies with respect to . . . all . . . conditions requiring satisfaction of the loan obligation. . ." 12 U.S.C.§ 1715z-20(e).

134.    The HECM statute further requires that prospective HECM borrowers receive counseling regarding "the financial implications of entering into the home equity conversion mortgage" and the "impact on the estate and heirs of the homeowner." 12 U.S.C § 1715z-20(e) & (f).

135.    The APA and the HECM statute entitle prospective HECM borrowers to be informed about HUD's rules covering HECM reverse mortgages prior to undertaking such a mortgage.

136.    Mr. and Mrs. Moore were provided the required disclosures and counseling under the rules that were in effect at the time. Under these rules, Mrs. Moore would be able to obtain clear title to the home after Mr. Moore's death for the lesser of the mortgage balance or the appraised value of the property.

24

137.    HUD issued ML 2008-38 in contravention of Congress's express directive that HECM borrowers receive full disclosure of their rights and that they be fully informed of those rights through counseling.

138.    In issuing ML 2008-38, HUD sought to give retroactive effect to its new definition of the term "non-recourse" and to apply retroactively a new arm's-length sale rule, thereby violating the APA and depriving Plaintiffs of the benefits on which they justifiably relied.

139.    Plaintiffs have been injured by HUD's illegal actions.

### COUNT THREE

**HUD's Imposition of the Arm's-Length Sale Requirement
Is Arbitrary & Capricious or Otherwise Not in Accordance
With Law in Violation of § 706(2) of the APA**

140.    Plaintiffs incorporate by reference as if fully set forth herein the allegations contained in paragraphs 1 through 139 above.

141.    Agency action that is arbitrary, capricious, or otherwise not in accordance with law is unlawful. 5 U.S.C. § 706(2).

142.    ML 2008-38 introduced a new requirement that any sale of a property subject to a HECM-insured reverse mortgage made for the purposes of repaying the loan be at arm's-length if the property is sold for less than the full mortgage balance.

143.    There is no foundation in the HECM statute or regulations for this rule. ML 2008-38 did not purport to interpret, and does not interpret, the HECM statute or relevant regulations.

144.    In addition, the new arm's length rule seeks to materially change the terms of existing mortgage contracts between Plaintiffs and their lenders.

25

145.    The effect of the new "arm's-length sale" requirement is to require Plaintiffs to pay the full mortgage balance on their spouses' HECMs to obtain clear title to the property subject to the mortgage while permitting a stranger to purchase the property for 95 percent of its appraised value.

146.    HUD has unlawfully imposed a rule without any legal basis.

147.    HUD's "arm's-length sale" requirement is arbitrary and capricious and has injured Plaintiffs in that it unjustifiably treats them less favorably than a complete stranger who wishes to purchase the property subject to the reverse mortgage. Plaintiffs have been injured by HUD's unlawful action.

### COUNT FOUR

**HUD's Contravention of the Anti-Displacement Provision of
the HECM Statute Is Arbitrary & Capricious or Otherwise Not
in Accordance with Law & Exceeds HUD's Statutory Authority
in Violation of § 706(2) of the APA**

148.    Plaintiffs incorporate by reference as if fully set forth herein the allegations contained in paragraphs 1 through 147 above.

149.    Federal agency action is unlawful if it is arbitrary, capricious or otherwise not in accordance with law or if it exceeds the agency's statutory authority. 5 U.S.C. § 706(2).

150.    The anti-displacement provision of the HECM statute provides the spouse of a HECM homeowner the same protection from displacement as the homeowner named on the mortgage. *See* 12 U.S.C. § 1715z-20(j).

151.    The HECM statute's anti-displacement provision states that HUD may insure a reverse mortgage only if "such mortgage provides that the homeowner's obligation to satisfy the loan obligation is deferred until the homeowner's death, sale of the property" or other occurrence to be identified by HUD.

26

152.   "Homeowner" is specially defined for purposes of 12 U.S.C. §1715z-20(j) to include a homeowner's spouse.  Spouses who are not named on the HECM mortgage are "homeowners" entitled to this protection.

153.   HUD failed to give effect to the plain meaning of the anti-displacement statutory mandate and has, in fact, enacted regulations that violate it.

154.   HUD's regulations are arbitrary and capricious or contrary to law and exceed HUD's statutory authority.

155.   Plaintiffs are "homeowners" entitled to protection from displacement by the HECM statute.

156.   Had HUD properly implemented the anti-displacement provision of the HECM statute, the reverse mortgages undertaken by Plaintiffs' spouses would not be due and payable and their homes would not be threatened with foreclosure.

157.   Plaintiffs have been injured and continue to be injured by HUD's failure to accord them the protections provided by 12 U.S.C. § 1715z-20(j).

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiffs pray that this Court:

a)   For Count One , enter a declaratory judgment that HUD has unlawfully  changed its rule as to the meaning and protections offered by the "non-recourse" provisions of a HECM mortgage and that Plaintiffs  may not be required to pay more than the appraised values to repay their spouses' HECMs;

b)   For Count One enter a declaratory judgment that HUD has unlawfully imposed an arm's length rule and that Plaintiffs may purchase the properties securing the HECM mortgages for 95% of their appraised values;

c)      For Count Two, enter a declaratory judgment that Mortgagee Letter 2008-38's reinterpretation of the meaning of "non-recourse" for HECMs and its adoption of a new rule that any sale of a property subject to a HECM mortgage for less than the full mortgage balance be at arm's-length are invalid and illegal rulemaking under the APA because they purport to create rules with retroactive effect;

d)      For Count Three, enter a declaratory judgment that HUD's requirement that any sale of a property subject to a HECM reverse mortgage be at arm's-length if the property is sold for less than the full mortgage balance is arbitrary and capricious or otherwise unlawful;

e)      For Count Four, enter a declaratory judgment that HUD failed to properly implement the anti-displacement protections in the HECM statute, has illegally passed regulations that contravene this protection, and that the Plaintiffs are entitled to the protections of 12 U.S.C. § 1715z-20(j);

f)      For Count Four, enter preliminary and permanent injunctions prohibiting HUD from claiming that the reverse mortgages taken out by Plaintiffs' spouses are not insured under the HECM program because the terms of the mortgages do not comply with the statutory anti-displacement provision;

g)      Enter preliminary and permanent injunctions prohibiting Defendant Donovan in his capacity as Secretary of HUD from requiring Plaintiffs to repay more than the value of the HECM-secured properties;

h)      Enter preliminary and permanent injunctions prohibiting Defendant Donovan in his capacity as Secretary of HUD from requiring Plaintiffs to pay more than 95% of the appraised value to purchase the HECM-secured properties;

i)      For Count Four, enter preliminary and permanent injunctions prohibiting HUD

from failing to accord Plaintiffs protection from displacement guaranteed to them by the HECM

statute;

j)      Award plaintiffs costs and attorneys fees under 28 U.S.C. § 2412;

k)      Grant all other appropriate relief; and

l)      Retain jurisdiction of this action to award relief as may be required.


Respectfully submitted,


Jean Constantine-Davis (jcdavis@aarp.org)
AARP Foundation Litigation- DC Bar #250084
601 E Street NW
Washington, DC 20049
202-434-2058
Fax: 202-434-6464


Steven A. Skalet (sskalet@findjustice.com) – #359804
Janell Byrd (jbyrd@findjustice.com) – DC Bar #376609
Craig L. Briskin (cbriskin@findjustice.com) – #980841
Mehri & Skalet, PLLC
1250 Connecticut Avenue NW
Suite 300
Washington, DC 20036
202-822-5100
Fax:  202-882-4997


Dated: March 8, 2011