## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

```
------------------------------------------------------------
ROBERT BENNETT, et al.,                   )
                                          )
                       Plaintiffs,        )
                                          )
          vs.                             )        11-CV-0498 (ESH)
                                          )
SHAUN DONOVAN, in his capacity as         )        Oral Argument Requested
SECRETARY OF THE                          )
UNITED STATES DEPARTMENT OF               )
HOUSING AND URBAN DEVELOPMENT,            )
                                          )
                       Defendant.         )
------------------------------------------------------------
```

## <u>PLAINTIFFS' MOTION FOR SUMMARY JUDGMENT</u>

Pursuant to Rule 56 of the Federal Rules of Civil Procedure, Plaintiffs Robert Bennett and Leila Joseph (collectively "Plaintiffs") respectfully submit this Motion for Summary Judgment as to Count Four of their Complaint. The grounds for this motion are set forth in the accompanying memorandum of points as authorities, a statement of undisputed facts, declarations of counsel and plaintiffs, and attached exhibits. A proposed order is also attached.

Plaintiffs respectfully request oral argument on this Motion for Summary Judgment.

Date:  May 15, 2013

Respectfully submitted,

/s/ Craig L. Briskin
Steven A. Skalet (D.C. Bar No. 359804)
Craig L. Briskin (D.C. Bar No. 980841)
Mehri & Skalet, PLLC
1250 Connecticut Avenue N.W., Suite 300
Washington, D.C. 20036
(202) 822-5100 (phone)
(202) 822-4997 (fax)

Jean Constantine-Davis (D.C. Bar No. 250084)
AARP Foundation Litigation
601 E Street NW
Washington, D.C. 20049
(202) 434-2058 (phone)
855-296-1218 (fax)

*Counsel for Plaintiffs*

**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

------------------------------------------------------------

ROBERT BENNETT, *et al.*,                          )
                                                                     )
                         Plaintiffs,                          )
                                                                     )
                   vs.                                          )          11-CV-0498 (ESH)
                                                                     )
SHAUN DONOVAN, in his capacity as       )
SECRETARY OF THE                                    )
UNITED STATES DEPARTMENT OF        )
HOUSING AND URBAN DEVELOPMENT,   )
                                                                     )
                     Defendant.                          )

------------------------------------------------------------

**MEMORANDUM OF LAW IN SUPPORT OF**
**PLAINTIFFS' MOTION FOR SUMMARY JUDGMENT**

## **Table of Contents**

I.   BACKGROUND ........................................................................................................... 2

   A.   The Home Equity Conversion Program ........................................................................ 2

       1.   HUD's Role as Regulator, Party, and Insurer of HECMs .......................................... 3
       2.   The HECM Statute's "Safeguard to Prevent Displacement of Homeowner"
          Expressly Includes the Borrower's Spouse.................................................................. 4

   B.   Plaintiffs ........................................................................................................................ 5

       1.   Robert Bennett ........................................................................................................... 5

       2.   Leila Joseph ............................................................................................................... 6

II.   PROCEDURAL HISTORY.............................................................................................. 7

III.   ARGUMENT.................................................................................................................... 9

   A.   Legal Standard............................................................................................................... 9

   B.   HUD's Regulations Ignore the Plain Language of the HECM Statute Protecting
      Spouses from Displacement............................................................................................ 10

   C.   HUD Can Redress Plaintiffs' Foreclosures.................................................................. 14

IV.   CONCLUSION ................................................................................................................ 15

## **Table of Authorities**

**Cases**

*Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242 (1986) ................................................... 9

*Bennett v. Donovan,* 703 F.3d 582 (D.C. Cir. 2013) .................................................... 5, 8, 13, 14

*Chevron, U.S.A, Inc. v. NRDC, Inc.,* 467 U.S. 837 (1984) .................................................... 10, 13

*Dickerson v. New Banner Institute*, 460 U.S. 103 (1983) .............................................. 12

*Dierson v. Chicago Car Exchange,* 110 F.3d 481 (7th Cir. 1997) ............................... 10

*Dole v. Steelworkers,* 494 U.S. 26 (1990) ..................................................................... 10

*FEC v. Democratic Senatorial Campaign Committee,* 454 U.S. 27 (1981) .............................. 10

*FEC v. National Conservative Political Action Committee*, 470 U.S. 480 (1985) ...................... 12

*Hi Tech Pharmacal Co. v. FDA,* 587 F. Supp. 2d 13 (D.D.C. 2008) ............................. 9

*Holcomb v. Powell*, 433 F.3d 889 (D.C. Cir. 2006) ...................................................... 9

*Mackey v. Lanier Collection Agency & Serv.*, 486 U.S. 825 (1988) ............................. 12

*Massachusetts Mutual Life Ins. Co. v. Russell*, 473 U.S. 134 (1985) ........................... 12

*Mineral Policy Ct. v. Norton,* 292 F. Supp. 2d 30 (D.D.C. 2003) ................................. 9

*PanAmSat Corp. v. FCC*, 198 F.3d 890, (D.C. Cir. 1999) ............................................ 10

*Park ' N Fly, Inc. v. Dollar Park and Fly, Inc.*, 469 U.S. 189 (1985) ......................... 12

*Potter* v. *United States,* 155 U.S. 438 (1894) ............................................................. 12

*Richards v. INS*, 554 F.2d 1173 (D.C. Cir. 1977) ....................................................... 9

*Sea-Land Service, Inc. v. DOT,* 137 F.3d 640 (D.C. Cir. 1998) .................................. 10

*Sierra Club v. EPA,* 551 F.3d 1019 (D.C. Cir. 2008) ................................................. 11

*Stuttering Foundation of America v. Springer*, 498 F. Supp. 2d 203 (D.D.C. 2007) ................ 9

*Sullivan v. Zebley,* 493 U.S. 521 (1990) ..................................................................... 10

*United States v. Generix Drug Corp.*, 460 U.S. 453 (1983) ......................................... 12

*Uzelmeier v. United States HHS*, 541 F. Supp. 2d 241 (D.D.C. 2008)............................................9

*Wang v. Pataki*, 396 F. Supp. 2d 446 (S.D.N.Y. 2005) ...............................................................4

**Statutes**

12 U.S.C. § 1715z-20(a) ........................................................................................... 1, 2

12 U.S.C. § 1715z-20(b)(1) .............................................................................................4

12 U.S.C. § 1715z-20(b)(3) ..................................................................................... 2, 11

12 U.S.C. § 1715z-20(c) ...............................................................................................3

12 U.S.C. § 1715z-20(h) ...............................................................................................3

12 U.S.C. § 1715z-20(i)(1) .............................................................................................5

12 U.S.C. § 1715z-20(i)(2) .............................................................................................5

12 U.S.C. § 1715z-20(j) ....................................................................................... 1, 2, 4

24 C.F.R. § 206.3 ...........................................................................................................13

24 C.F.R. § 206.27(c)........................................................................................................7

24 C.F.R. § 206.27(c)(1) ..................................................................................... 13, 14

24 C.F.R. § 206.27(d) ......................................................................................................3

24 C.F.R. § 206.33 ...........................................................................................................2

24 C.F.R. § 206.117 .........................................................................................................3

24 C.F.R. § 206.121(b) ....................................................................................................3

24 C.F.R. § 206.123(a)(3) & (4) ......................................................................................4

24 C.F.R. § 206.125(a)(2) ................................................................................................4

24 C.F.R. § 206.125(c)......................................................................................................7

5 U.S.C. § 551 .................................................................................................................7

5 U.S.C. § 553 .................................................................................................................7

5 U.S.C. § 706(2) ....................................................................................................................... 7

Fed. R. Civ. P. 56(a) ................................................................................................................... 9

Fed. R. Evid. 201(b)(2) .............................................................................................................. 4

Moore's Federal Practice – Civil § 56.95 ................................................................................. 4

Congress established the federal Home Equity Conversion Mortgage program to provide support for the creation of reverse mortgages through the provision of federal mortgage insurance.  Congress did so in order "to meet the special needs of elderly homeowners by reducing the effect of the economic hardship caused by the increasing costs of meeting health, housing, and subsistence needs at a time of reduced income[.]"  12 U.S.C. § 1715z-20(a).  These reverse mortgages are backed by an insurance fund, to which all reverse mortgage borrowers contribute premiums, so that both lenders and borrowers would be assured of the benefits and protections that reverse mortgages are designed to provide.  An essential component of the reverse mortgage program is the "Safeguard to prevent displacement of homeowner" in subsection (j) of the statute, which Congress intended to ensure that the death of a borrower would not result in the foreclosure and eviction of the borrower's spouse.  The statute is clear that for purposes of this safeguard for homeowners, "the term 'homeowner' includes the spouse of a homeowner."  12 U.S.C. § 1715z-20(j).

The regulations, practices and procedures of the United States Department of Housing and Urban Development ("Defendant" or "HUD") treat this "safeguard" for spouses as if it did not exist.  Under HUD's regulations, only elderly homeowners who qualify as "mortgagors" are protected; spouses are not.  HUD's failure to follow Congress's instructions puts older homeowners in financial jeopardy at the precise moment when they are most vulnerable:  when the spouse on the mortgage dies, the other spouse faces an immediate demand for repayment of the reverse mortgage.  It is due to HUD's faulty regulations that Plaintiffs were victimized by unscrupulous mortgage brokers, and they now face the very economic hardship that Congress expressly intended to alleviate.

Pursuant to Federal Rule of Civil Procedure 56, Plaintiffs Robert Bennett and Leila Joseph, by and through their Counsel, move this Court for summary judgment against Defendant Shaun Donovan, in his capacity as Secretary of the United States Department of Housing and Urban Development ("Defendant" or "HUD"), with respect to Count Four of their Complaint, the only legal claim remaining in this case.  Plaintiffs are entitled to judgment as a matter of law that HUD's regulations violate 12 U.S.C. § 1715z-20(j) to the extent that they fail to extend the "Safeguard to prevent displacement of homeowner" to spouses, which the statute expressly requires.  This Court should further order Defendant to take any and all actions necessary to protect them from foreclosure.

## I.     BACKGROUND

### A.      The Home Equity Conversion Program

Congress enacted the HECM program in 1988, and authorized HUD to insure mortgages originated by private lenders that would "permit the conversion of a portion of accumulated home equity into liquid assets."  12 U.S.C. § 1715z-20(a).

A reverse mortgage provides "future payments to the homeowner based on accumulated equity" in the home.[1]  Reverse mortgages insured by Defendant pursuant to the federal reverse mortgage program are called home equity conversion mortgages, or "HECMs."  The borrower can but is not required to make payments on the loan until one of a number of events occurs, including the death of the homeowners or the sale of the property. 12 U.S.C. § 1715z-20(j).  HUD regulations state that one must be at least 62 years of age to be eligible.  24 C.F.R. § 206.33.  Borrowers can choose to receive the loan proceeds in a lump sum, on a monthly basis, or through a line of credit periodically as needed.  12 U.S.C. § 1715z-20(d)(9).

---

[1] 12 U.S.C. § 1715z-20(b)(3).  "Homeowner" and "elderly homeowner" mean any homeowner who is, or whose spouse is, at least 62 years of age or higher.  12 U.S.C. § 1715z-20(b)(1).

### 1.      HUD's Role as Regulator, Party, and Insurer of HECMs

HUD is integral to every aspect of the HECM program.  First, HUD administers the

program and issues its governing regulations.  12 U.S.C. § 1715z-20(c) & (h); 24 C.F.R. § 206.1

*et seq.*  HUD publishes interpretations of the HECM regulations in the HUD Handbook, 4235.1

REV-1 (1994), Home Equity Conversion Mortgages, and in a series of mortgagee letters from

HUD to private lenders participating in the program.  HUD also issues a standard HECM Note,

Deed of Trust/Mortgage, and HECM Loan Agreement and requires their use in every HECM

transaction.

Second, HUD is a party to every HECM transaction.  24 C.F.R. § 206.27(d).  Every

HECM borrower, including Plaintiffs' spouses, executes two deeds of trust: one in favor of the

primary lender, and another in favor of HUD.  Statement of Facts ("SOF") ¶ 29.  Along with the

borrower and lender, HUD executes the HECM Loan Agreement, through which HUD commits

to making payments to borrowers as required by the loan documents, if and when a lender

refuses or is unable to do so.  In that event, HUD takes assignment of the mortgage and

ultimately collects under the lender's first mortgage and/or under the second mortgage to which

HUD is a party. 24 C.F.R. §§ 206.117; 206.121(b); *see also* Ex. G, Articles 4 & 5.[2]

Third, HUD insures HECM loans through its FHA insurance program.  12 U.S.C.

§ 1715z-20(c).  For this insurance, borrowers are charged an upfront premium of 2% of the value

of the property at closing, and additional monthly premiums of 0.5% of the current loan balance.

24 C.F.R. § 206.105.  The insurance premiums guarantee lenders that, even if property values

decrease over the term of the mortgage, they will be repaid the full mortgage balance.  *See* 24

---

[2] All exhibits referenced herein are attached to the Declaration of Jean Constantine Davis, Esq., submitted herewith.

C.F.R. § 206.123(a)(3)-(5) (insurance claim procedures for lenders where property is sold for

less than the mortgage balance).

### 2.     The HECM Statute's "Safeguard to Prevent Displacement of Homeowner" Expressly Includes the Borrower's Spouse.

Subsection (j) of the statute, titled "Safeguard to prevent displacement of homeowner,"

expressly includes the borrower's spouse in the safeguard, regardless of whether the spouse is a

borrower on the mortgage:

> The Secretary may not insure a home equity conversion mortgage under this section unless such mortgage provides that the homeowner's obligation to satisfy the loan obligation is deferred until the homeowner's death, sale of the home, or the occurrence of other events . . . [to be determined by HUD].  *For purposes of this subsection, the term "homeowner" includes the spouse of a homeowner.*[3]

The legislative history of Subsection (j) confirms Congress's intent to protect homeowners and

spouses.  A Senate Report states that HECM mortgages shall "defer[ ] any repayment obligation

until death of the homeowner *and* the homeowner's spouse . . ." (emphasis added).[4]  Without this

protection, older homeowners will (and do) face a demand for full repayment of the mortgage,

and foreclosure if they cannot repay, at the worst possible time:  about a month after they lose

their spouses.  *See* 24 C.F.R. § 206.125(a)(2).

---

[3] 12 U.S.C. § 1715z-20(j) (emphasis added).  The statute defines "homeowner" generally as "any homeowner who is, or whose spouse is, at least 62 years of age or such higher age as the Secretary may prescribe."  12 U.S.C. § 1715z-20(b)(1).

[4] Report 100-21 by the Senate Committee on Banking, Housing and Urban Affairs accompanying S. 825, 100th Congress, Section 135 (reporting on Subsection 254(j)) (Ex. I). Legislative history is properly a subject of judicial notice.  Fed. R. Evid. 201(b)(2); *Wang v. Pataki*, 396 F. Supp. 2d 446, 453 n.1 (S.D.N.Y. 2005) ("The Court may . . . take judicial notice of public documents, such as legislative histories.").  Judicially noticed facts are properly considered on a motion for summary judgment.  *See generally* 11-56 Moore's Federal Practice – Civil § 56.95.

The statute also broadly directs that HUD, in order to "further the purposes of the [HECM] program," "shall take any action necessary . . . to provide any mortgagee under this section with funds . . . to which the mortgagee is entitled under the terms of the insured mortgage or ancillary contracts authorized in this section." 12 U.S.C. § 1715z-20(i)(1). "Actions under paragraph (1) may include . . . disbursing funds to the mortgagor or mortgagee from the Mutual Mortgage Insurance Fund," and "accepting an assignment of the insured mortgage . . . and making the payment of the insurance claim on such assigned mortgage." 12 U.S.C. § 1715z-20(i)(2). Thus, where it is necessary to effectuate the protection from displacement in Subsection (j), and make the lender whole, HUD may pay the lender any funds it is owed, and/or accept assignment of the mortgage. *Id.*; *see also Bennett v. Donovan,* 703 F.3d 582, 588 (D.C. Cir. 2013) (explaining how HUD can provide complete relief to both borrowers and lenders under the statute).

B.     **Plaintiffs**[5]

1.     **Robert Bennett**

Mr. Bennett and his wife jointly owned their home in Annapolis, Maryland for approximately 27 years. SOF ¶ 1.   In 2008, when they were aged 66 and 76 respectively, Mr. and Mrs. Bennett began receiving calls from mortgage brokers, who advised them to refinance their existing  mortgage into a reverse mortgage. *Id.* ¶ 2.  They met a mortgage broker from 1st Continental Mortgage, who explained that the reverse mortgage would allow them to stay in their home with no payments for the rest of their lives. *Id.* ¶ 3.  The housing counseling arranged for the Bennetts by the mortgage broker took place over the telephone; there was no mention that

----

[5] There were originally three plaintiffs in this case. Plaintiff Delores Jeanne Moore subsequently purchased the property from the estate of her deceased husband and is no longer a plaintiff in this case.

Mr. Bennett would be removed from the deed during counseling.  *Id*. ¶ 5.   During the closing of

the reverse mortgage in December 2008, without being advised or informed about the matter,

Mr. Bennett signed a deed transferring title to the property to Mrs. Bennett.  *Id*. ¶¶ 6, 7; Ex. A.

Mr. Bennett subsequently received a counseling certificate that listed him as a "homeowner."  *Id*.

¶ 8.

Mrs. Bennett died just one month after the closing.  *Id*. ¶ 9.   In March 2010, the mortgage

servicer, James B. Nutter & Co., sent Mr. Bennett a letter stating its intent to foreclose on the

home within 30 to 60 days.  *Id*. ¶ 11.   In December 2010, Mr. Bennett, through counsel, advised

Nutter that he was a "homeowner" under the HECM statute, and thus protected from

displacement.  *Id*. ¶ 12.   Nonetheless, James B. Nutter & Co. denied Mr. Bennett's asserted

rights, stating, "as a servicer, we follow HUD guidelines for repayment of these loans."   It

initiated foreclosure proceedings on December 14, 2010.  *Id*. ¶¶ 13, 14; Ex. D.

### 2.      Leila Joseph

Mrs. Joseph and her husband owned their Brooklyn, New York home jointly for

approximately 25 years.  SOF ¶ 15. Mr. Joseph was diagnosed with Alzheimer's disease in

August 2006.  *Id.* ¶ 16.   In 2009, the Josephs were behind in their mortgage payments and were

receiving constant calls from mortgage broker/telemarketers of reverse mortgages .  *Id*. ¶ 17.

The Josephs met with a representative of First Franklin Financial named Doug Vairo.  Mr.

Joseph was 82 years old at the time; Mrs. Joseph was 76.  *Id*. ¶ 18.   He talked with them about a

reverse mortgage and told them that they should transfer the deed to Mr. Joseph, so they could

get a larger loan.  *Id*. ¶ 19.   Mrs. Joseph was concerned about whether this was a good idea,

because her husband had been sick for a long time.  She asked Mr. Vairo what would happen if

her husband died before her.  He said she did not have to worry, and that her name would go

back on the deed after two years, and that if her husband died in the meantime, he would work

with her to be sure she could stay in her home.  *Id.* ¶ 20.

Despite the fact that Mr. Joseph had dementia, only he received telephone counseling;

Mrs. Joseph did not.  *Id.*  ¶¶ 16, 22, 23.  Mr. Joseph died on August 30, 2009, a few months after

executing the reverse mortgage.  *Id*. ¶ 24.  A few months later, Mrs. Joseph began receiving

letters from MetLife telling her that the mortgage was due and she would have to pay it or they

would foreclose.  *Id.* ¶ 25.

Mrs. Joseph received help from an attorney in Brooklyn.  They told MetLife about Mr.

Joseph's illness and sent his medical records.  They also told MetLife about the assurances that

Mr. Vairo had given her.  *Id.* ¶  26.  On September 28, 2010, MetLife denied that anything

improper had happened, and started foreclosure proceedings against her.  *Id.* ¶ 27.


## II.    PROCEDURAL HISTORY

In March 2011, Plaintiffs filed their Complaint (Dkt. No. 1), alleging that HUD had

violated the Administrative Procedure Act ("APA"), 5 U.S.C. § 551 *et seq*., in two separate

ways.

First, Plaintiffs allege that HUD's issuance of Mortgagee Letter 2008-38 ("ML 2008-38")

violated the APA, 5 U.S.C. §§ 553 and 551, because it retroactively changed, without notice or

the opportunity for public comment, 24 C.F.R. § 206.125(c), which permits the estate of a

HECM borrower to satisfy the mortgage by selling the property for the lesser of the mortgage

balance or 95% of its appraised value ("arm's length rule").  Second, Plaintiffs allege that

HUD's regulations fail to protect homeowner spouses from displacement, as the statute's

Subsection (j) demands, and that HUD's regulation at  24 C.F.R. § 206.27(c) violates the APA, 5

U.S.C. § 706(2), because it is arbitrary, capricious, or otherwise not in accordance with law and because it was issued in excess of HUD's authority, under the APA, 5 U.S.C. § 706(2).

Plaintiffs sought a declaratory judgment that (1) HUD had violated the APA's notice-and-comment provisions; (2) HUD had illegally sought to give retroactive effect to the Arm's length rule; (3) issuance of the Arm's length rule was arbitrary and capricious or otherwise not in accordance with law (4) HUD's interpretation of Subsection (j) was illegal; and (5) Plaintiffs are "homeowners" entitled to protection from displacement under Subsection (j).

On March 31, 2011, Plaintiffs filed a motion for preliminary injunction to suspend ML 2008-38 and order HUD to halt their pending foreclosure actions (Dkt. No. 2). Less than a week later, HUD issued ML 2011-16, which rescinded ML 2008-38 and the arm's length rule. HUD also contacted the mortgage servicers for the Bennett, Joseph and Moore HECMs, and instructed each to place the foreclosures on Plaintiffs' homes on hold during the pendency of this litigation. The servicers immediately complied. Constantine-Davis Decl. ¶ 5; Ex. H.

HUD then filed a motion to dismiss the Subsection (j) claim. Dkt. No. 9. It argued that (1) Plaintiffs did not have standing because their injuries (the foreclosures) were not caused by HUD's interpretation of Subsection (j), but by the terms of their spouses' HECM mortgages with private lenders; and (2) HUD's interpretation of Subsection (j) was correct.

On July 15, 2011, the district court granted HUD's motion to dismiss, holding that Plaintiffs' claims were not redressable. Dkt. No. 15, 16. The Court concluded that Plaintiffs had failed to establish that it was "likely, as opposed to merely speculative, that the injury [the foreclosures] will be redressed by a favorable decision on the merits." Dkt. No. 15. This Court denied Plaintiffs' motion for reconsideration in an order dated September 22, 2011 (Dkt. No. 20).

The Court of Appeals reversed, and held that Plaintiffs had standing, because the reverse mortgage statute empowered HUD to provide complete relief to both spouses and lenders by accepting assignment of the mortgages, paying off the loans, and declining to foreclose, which powers were explicitly granted to HUD in Subsection (i) of the statute. *Bennett v. Donovan*, 703 F.3d 582, 588-90 (D.C. Cir. 2013).

The Court of Appeals recognized that the issue on appeal was "limited to appellants' standing," then stated, "But we admit to being somewhat puzzled as to how HUD can justify a regulation that seems contrary to the governing statute." *Id.* at 586.

The Court of Appeals remanded the case to this Court for further proceedings. It denied panel rehearing on February 27, 2013. 2013 U.S. App. LEXIS 4063 (D.C. Cir. Feb. 27, 2013). On remand, this Court convened a status conference on April 10, 2013, and set a briefing schedule on the parties' proposed motions for summary judgment (4/10/2013 Minute Entry).

## III.   ARGUMENT

### A.   Legal Standard

Summary judgment shall be granted "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."[6]  As this Court has explained, "[S]ummary judgment serves as the mechanism for deciding, as a matter of law, whether the agency action is supported by the administrative record and otherwise consistent with the APA standard of review."[7]

---

[6] Fed. R. Civ. P. 56(a); *see also Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48 (1986); *Holcomb v. Powell*, 433 F.3d 889, 895 (D.C. Cir. 2006); *Uzelmeier v. United States HHS*, 541 F. Supp. 2d 241, 244-45 (D.D.C. 2008).

[7] *Hi Tech Pharmacal Co. v. FDA*, 587 F. Supp. 2d 13, 18 (D.D.C. 2008).  *See also Stuttering Foundation of America v. Springer*, 498 F. Supp. 2d 203, 207 (D.D.C. 2007) (citing *Richards v. INS*, 554 F.2d 1173, 1177 & n.28 (D.C. Cir. 1977); *Mineral Policy Ct. v. Norton*, 292 F. Supp. 2d 30, 36 (D.D.C. 2003).

**B.      HUD's Regulations Ignore the Plain Language of the HECM Statute Protecting Spouses from Displacement.**

Under the Administrative Procedure Act, a court reviews agency action to determine whether it is arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law.  5 U.S.C. § 706.  Federal agency actions are reviewable by a district court, which "shall decide all relevant questions of law, interpret constitutional and statutory provisions, and determine the meaning or applicability of the terms of an agency action."  5 U.S.C. §§ 703, 706.  "The judiciary is the final authority on issues of statutory construction and must reject administrative constructions which are contrary to clear congressional intent."[8]

HUD's position directly contradicts the clear statutory language.  The *Chevron* Court stated:

> When a court reviews an administrative agency's interpretation of a statute it administers, it must answer two questions**.**   First, always, is the question of whether Congress had directly spoken to the precise question at issue.  If the intent of Congress is clear, that is the end of the matter; for the court, as well as the agency must give effect to the unambiguously expressed intent of Congress.  If, however, the court determines Congress has not directly addressed the precise question at issue, the court does not simply impose its own construction of the statute. . . Rather, if the statute is silent or ambiguous with respect to the specific issue, the question for the

---

[8] *Chevron, U.S.A, Inc. v. NRDC, Inc.,* 467 U.S. 837, 843 (1984).  *See also FEC v. Democratic Senatorial Campaign Committee,* 454 U.S. 27, 32 (1981); *PanAmSat Corp. v. FCC*, 198 F.3d 890, 897 (D.C. Cir. 1999) (quoting *Sea-Land Service, Inc. v. DOT,* 137 F.3d 640, 646 (D.C. Cir. 1998)) ("An agency action, however permissible as an exercise of discretion, cannot be sustained 'where it is based not on the agency's own judgment but on an erroneous view of the law.'"); *Sullivan v. Zebley,* 493 U.S. 521, 536 (1990) (regulations "are simply inconsistent with the statutory standard"); *Dole v. Steelworkers,* 494 U.S. 26 (1990) (deference to agency interpretation of Paperwork Reduction Act is not warranted where agency has misread the statute); *Dierson v. Chicago Car Exchange,* 110 F.3d 481, 486 (7th Cir. 1997) ("[L]egislative power rests in Congress and . . . the will of Congress as unambiguously expressed in a properly enacted statute cannot be amended or altered by regulation. A rule that directly contradicts an unambiguous statutory provision is void.").

court is whether the agency's answer is based on a permissible construction of the statute.[9]

There is no "silence" or ambiguity" in the HECM statutory language at issue:

> Safeguard to prevent displacement of homeowner.  The Secretary may not insure a home equity conversion mortgage under this section unless such mortgage provides that the homeowner's obligation to satisfy the loan obligation is deferred until the homeowner's death, the sale of the home, or the occurrence of other events specified in the regulations of the Secretary.  *For purposes of this subsection, the term "homeowner" includes the spouse of a homeowner.*

12 U.S.C § 1715z-20(j) (emphasis added).  This "safeguard" from "displacement" extends not just to the HECM borrower on the mortgage, but to the spouse of that borrower, because this section explicitly defines them both as "homeowners."

The term "homeowner" appears in the title of the HECM statute – "Insurance of home equity conversion mortgages for elderly homeowners" – and appears an additional 27 times in the statutory text.  It is not an incidental term.  The very specific definition of "homeowner" in subjection (j) is consistent with the HECM statute's general definition of homeowner:  "the terms 'elderly homeowner' or 'homeowner' mean any  homeowner who is, *or whose spouse is,* at least 62 years of age or such higher age as the Secretary may prescribe."  12 U.S.C § 1715z-20(b) (emphasis added).  As such, the statute gave HUD explicit authority to increase the minimum age of the homeowner and/or the spouse in designing the program, but it did *not* give HUD the discretion to eliminate the "homeowner" protection for spouses.  The statute recognizes that the "homeowner" and "spouse" are two different people, one of whom may not own the home.  *See,*

---

[9] *Id.* at 842-43.  HUD is not free to "construe [the HECM statute] in a way that completely nullifies textually applicable provisions. . ."  *Sierra Club v. EPA,* 551 F.3d 1019, 1028 (D.C. Cir. 2008).

*e.g.,* 12 U.S.C. § 1715z-20(b)(3) (stating that payments based on accumulated equity go to the homeowner, which does not include the spouse).

In Subsection j, the statute goes further, specifying that for purposes of the safeguard from displacement, "spouses" are to be considered protected "homeowners" as well.  The statute, therefore, reflects the expectation that some HECMs would be originated by only one of the two spouses, but *both* must be protected from displacement.  The plain meaning of Subsection (j) is confirmed in the legislative history of 12 U.S.C. § 1715z-20(j).  The Senate Report on the legislation states that HECM mortgages shall "defer[ ] any repayment obligation until death of the homeowner *and* the homeowner's spouse . . ." (emphasis added).[10]

Any other reading of the statutory language strains the rules of statutory construction, and the rules of plain English.  There is no reason to include this language in the anti-displacement provision, other than to protect non-borrower spouses from displacement.  Any reading to the contrary renders this language mere surplusage.[11]  This is not a question of a few stray words that may have been inadvertently inserted without regard to their possible meaning.  The protection from displacement  is a full sentence, one that Congress stated with intentionality ("For the purposes of this subsection . . ."), directed specifically towards the provision in which it is found

---

[10]   Report 100-21 by the Senate Committee on Banking, Housing and Urban Affairs accompanying S. 825, 100th Congress, Section 135 (reporting on Subsection 254(j)) (Ex. I).

[11]   *See Potter* v. *United States,* 155 U.S. 438, 446 (1894) (the presence of statutory language "cannot be regarded as mere surplusage; it means something"); *Mackey v. Lanier Collection Agency & Serv.*, 486 U.S. 825, 837 (1988) (citing *Massachusetts Mutual Life Ins. Co. v. Russell*, 473 U.S. 134, 142 (1985) (court is hesitant to adopt an interpretation of a congressional enactment which renders superfluous another portion of that same law); *FEC v. National Conservative Political Action Committee*, 470 U.S. 480, 486 (1985); *Park ' N Fly, Inc. v. Dollar Park and Fly, Inc.*, 469 U.S. 189, 197 (1985); *United States v. Generix Drug Corp.*, 460 U.S. 453, 458-459 (1983); *Dickerson v. New Banner Institute*, 460 U.S. 103, 118 (1983)).

(against displacement), and inserted immediately after the term ("homeowner") it is referencing.[12]

HUD's regulations barely mention "homeowners" at all.  Instead, they set out the rights and responsibilities of a "mortgagor,"[13] which is defined as "each original borrower under a mortgage," and explicitly excludes the successors or assigns of a borrower.  24 C.F.R. § 206.3.  Defendant's regulations completely disregard the protection for spouses:  "the mortgage shall state that the mortgage balance will be due and payable in full if a mortgagor dies and the property is not the principal residence of at least one surviving mortgagor . . .."[14]  Similarly, the regulations authorize the lender to declare the mortgage due and payable when the "mortgagor" has died, with no reference to whether a surviving spouse is living in the property.  24 C.F.R. § 206.125(a)(1) & (2).  Because these regulations, and specifically the due and payable provision in Section 206.27, blatantly contradict the statute's plain language and Congressional intent, they cannot be upheld.  *See Chevron,* 467 U.S. at 842-43 (where Congress has spoken directly on the issue, the court must give effect to the congressional intent); *Bennett,* 703 F.3d at 586 (Court of

---

[12]   HUD has aggravated its failure to enforce the anti-displacement provision through its recommendation that homeowners "quitclaim" their property interest in order to become eligible for HECMs, or to increase the size of the HECM.  At the same time, the quitclaiming homeowner need receive *no counseling* because HUD does not require it.  Mortgagee Letter 2006-25 (Ex. J).

[13] The term "homeowner" appears a few times in HUD's regulations only, and none of these references encompass the definition of homeowner provided in the HECM statute, which includes a non-borrower spouse.  *See* 24 C.F.R. § 206.302 (requiring a "homeowner" to receive counseling; HUD does not require spouse to receive counseling).  Nowhere in HUD's references to homeowners does it give effect to the statutory protection against spousal displacement.

HUD regulations also include an "Expanded definition of mortgagor" that includes "the mortgagor's estate or personal representative."  24 C.F.R. § 206.123(b).  This definition, however, only applies "in reference to a sale by the mortgagor," and is inapplicable to the section protecting homeowners from displacement.

[14] 24 C.F.R. § 206.27(c)(1).  A "mortgagor" is "each original borrower under a mortgage," specifically excluding successors and assigns.  24 C.F.R. § 206.3.

Appeals stating that HUD's reading of the spousal displacement provision "seems contrary to the governing statute").

Thus, HUD strips spouses of their explicit statutory protection against displacement, and renders the core statutory protection at issue here mere surplusage.[15]  Congress plainly articulated its intent to protect spouses of HECM borrowers with unambiguous language. HUD's failure to enforce the protection for all "homeowners" through its regulations is fatal to their validity.

### C.    HUD Can Redress Plaintiffs' Foreclosures

As Plaintiffs have maintained throughout this litigation, HUD is the cause of Plaintiffs' injuries and has the power as well as the obligation to take steps to protect them from displacement and redress their foreclosures.  *See* Dkt. No. 2 at 24; Dkt. No. 13 at 6, n. 5. ("Congress has granted HUD broad authority to protect both the homeowner and lender through

---

[15] HUD's shift from "homeowner" to "mortgagor" can be traced to HUD's proposed rule to implement the HECM legislation, published in the Federal Register on October 25, 1988. Notably, the section describing the protection against spousal displacement initially refers to "homeowners" but shifts in mid-stream:

> Section 255(j) of the Act [protecting homeowners from displacement] provides that the Secretary may not insure a mortgage unless the mortgage documents contain provisions to prevent the elderly *homeowner* from being displaced from the home.  The *mortgagor* could not be forced to sell the home to pay the mortgage as long as the *mortgagor* continued to occupy the property as a principal residence, subject to narrow exceptions requiring HUD consent, even though the mortgage principal balance, including accrued interest and mortgage insurance premiums (MIP), grows to exceed the value of the property.  The proposed rule at §206.27(c) covers this point.

53 Fed. Reg. 43156 (emphasis added).  From one sentence to the next, HUD transitioned from considering the rights and obligations of "homeowners" to those of "mortgagors," and conflated the spousal displacement provision with § 206.27(c) – the section that states that the mortgagor will have no personal liability for payment of the mortgage balance. This effectively gutted the statute's protection of non-borrowing spouses from displacement.

payment of HECM insurance funds.  *See* 12 U.S.C. § 1715z-20(i)")  Dkt. No. 17 at 24.  While the

D.C. Circuit did not rule that HUD had to redress Plaintiffs' injury through use of its assignment

authority, it recognized the efficacy of such action as a mean of redress. *Bennett v. Donovan,* 703

F.3d at 588.


IV.     **CONCLUSION**

        HUD's regulations are contrary to the plain language of the HECM statute and the clearly

expressed intent of Congress to protect surviving spouses of reverse mortgage borrowers from

displacement if the borrowing spouse predeceases them.  Congress gave HUD tools with which

it can remedy the problem.  Plaintiffs ask that the Court hold that 24 C.F.R. § 206.27(c)(1) and

206.125(a) are illegal under the APA, and that it require HUD to take steps immediately to

provide Plaintiffs the protection of Subsection (j).

Date:  May 15, 2013

                                        Respectfully submitted,

                                        /s/ Craig L. Briskin
                                        Steven A. Skalet (D.C. Bar No. 359804)
                                        Craig L. Briskin (D.C. Bar No. 980841)
                                        Mehri & Skalet, PLLC
                                        1250 Connecticut Avenue N.W., Suite 300
                                        Washington, D.C. 20036
                                        (202) 822-5100 (phone)
                                        (202) 822-4997 (fax)

                                        Jean Constantine-Davis (D.C. Bar No. 250084)
                                        AARP Foundation Litigation
                                        601 E Street NW
                                        Washington, D.C. 20049
                                        (202) 434-2058 (phone)
                                        855-296-1218 (fax)

                                        *Counsel for Plaintiffs*

**UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

---------------------------------------------------------

ROBERT BENNETT, *et al.,*    )
           )
      Plaintiffs,  )
           )
   vs.       )   11-CV-0498 (ESH)
           )
SHAUN DONOVAN, in his capacity as )
SECRETARY OF THE     )
UNITED STATES DEPARTMENT OF )
HOUSING AND URBAN DEVELOPMENT, )
           )
      Defendant.  )

---------------------------------------------------------

**PLAINTIFFS' STATEMENT OF FACTS AS TO
WHICH THERE IS NO GENUINE ISSUE**

   Pursuant to Rule 56 of the Federal Rules of Civil Procedure, and Local Rule 7(h), Plaintiffs submit this statement of material facts as to which there is no genuine dispute in support of their Motion for Summary Judgment.  Plaintiffs filed their Complaint on March 8, 2011 (Dkt. No. 1).  Defendant did not serve or file an answer to the Complaint, and it has filed no administrative record.  Therefore, all facts alleged in the Complaint are deemed admitted for purposes of Plaintiffs' Motion for Summary Judgment.  Out of an abundance of caution, Plaintiffs cite additional materials in support of this Statement of Facts.

**A.  ROBERT BENNETT**

   1.   Plaintiff Robert Bennett and his wife jointly owned their home in Annapolis, Maryland for approximately 27 years, until 2008.  Bennett Decl. ¶ 2.

   2.   In 2008, when his wife was age 76 and Mr. Bennett was age 66, they began receiving calls from mortgage brokers, who advised them to refinance their mortgage into a reverse mortgage.  *Id.* ¶ 3.

1

3.      The Bennetts met a mortgage broker from 1st Continental Mortgage, who explained that the reverse mortgage would allow them to stay in their home with no payments for the rest of their lives.  *Id.* ¶ 4.

4.      The Bennetts applied for the reverse mortgage based on the broker's advice.  *Id.* ¶ 5.

5.      The broker set up telephone housing counseling for the Bennetts.  During that counseling, no one explained to them that he would not still own his home or that he would not be permitted to remain in my home as planned.  *Id.* ¶ 6.

6.      During the closing on the reverse mortgage, Mr. Bennett signed a document which, unbeknownst to him, quitclaimed his interest in his home.  Ex. A.

7.      Mrs. Bennett signed the HECM documents on December 17, 2008.  Exs. B & C.

8.      The Bennetts subsequently received a counseling certificate that listed Mr. Bennett as a "homeowner."  *Id.*

9.      Mr. Bennett's wife, whom the broker knew had been sick for some time, died one month later.  *Id.* ¶ 8.

10.     Mr. Bennett informed the mortgage company of his wife's death soon afterwards. *Id.*

11.     In March 2010, the mortgage company sent Mr. Bennett a letter that said it was going to foreclose on his home within 30 to 60 days.  *Id.* ¶ 10.

12.     In December 2010, Mr. Bennett's lawyer wrote to James B. Nutter (the mortgage servicer) and told them that Mr. Bennett was entitled to stay in his home.  *Id.* ¶ 11 & Ex. D.

13.     James B. Nutter & Co. sent a letter back denying that Mr. Bennett had this right, and stated that "as a servicer, we follow HUD guidelines for repayment of these loans."  *Id.* ¶ 12 & Ex. D.

14.     James B. Nutter & Co. began foreclosure proceedings on December 14, 2010.  *Id.* ¶ 12.

**B.     LEILA JOSEPH**

15.     Leila Joseph and her husband owned their home at 627 Vermont Street, Brooklyn, New York jointly from 1980 to 2005.  Joseph Decl. ¶ 2.

16.     Mrs. Joseph's husband was diagnosed with Alzheimer's disease in August 2006.  *Id.* ¶ 3.

17.     In early 2009, the Josephs were behind in the payments on their mortgage.  They were getting constant calls from mortgage brokers and telemarketers.  *Id.* ¶ 4.

18.     Mr. Joseph was 82 years old at the time; Mrs. Joseph was 76.  *Id.* ¶ 4.

19.     The Josephs met with a mortgage broker from First Franklin Financial named Doug Vairo.  He talked with them about a reverse mortgage and told them that they should transfer the deed to Mr. Joseph, so they could get a larger loan.  *Id.* ¶ 5.

20.     Mrs. Joseph was concerned about whether this was a good idea, because her husband had been sick for a long time.  She asked Mr. Vairo what would happen if her husband died before her.  He said she did not have to worry, and that her name would go back on the deed after two years, and that if her husband died in the meantime, he would work with her to be sure she could stay in her home.  *Id.* ¶ 6.

21.     Mrs. Joseph quitclaimed her interest in the home to Mr. Joseph, as Mr. Vairo directed.  Ex. E.

22.     Mr. Vairo arranged for Mr. Joseph to receive telephone counseling.  *Id.* ¶ 7.

23.     Mrs. Joseph received no counseling.  *Id.*

24.     Mr. Joseph died on August 30, 2009, a few months after executing the reverse mortgage.  *Id.* ¶ 8; Ex. K.

3

25.     A few months later, Mrs. Joseph began receiving letters from MetLife telling her that the mortgage was due and she would have to pay it or they would foreclose.  *Id.* ¶ 9.

26.     Mrs. Joseph received help from an attorney in Brooklyn.  They told MetLife about Mr. Joseph's illness and sent his medical records.  They also told MetLife about the assurances that Mr. Vairo had given her.  *Id.* ¶  10.

27.     On September 28, 2010, MetLife denied that anything improper had happened, and started foreclosure proceedings against her.  *Id.* ¶ 11.

*********

28.     After Plaintiffs filed their Motion for Preliminary Injunction in March 2011, HUD contacted the servicers of the subject mortgages by email and directed them, "Please place the below HECM foreclosure on hold until further notice from HUD."  The servicers all complied, and Plaintiffs' foreclosures have been stayed since that time.  Ex. H.

29.     At the time Plaintiffs' spouses consummated the HECMs, they were each required to execute and did execute a Second Mortgage or Second Deed of trust for the benefit of HUD.  Exs. C & F.


May 15, 2013                              Respectfully submitted,

                                         /s/ Craig L. Briskin
                                         Craig L. Briskin (D.C. Bar No. 980841)
                                         Steven A. Skalet (D.C. Bar No. 359804)
                                         Mehri & Skalet, PLLC
                                         1250 Connecticut Avenue N.W., Suite 300
                                         Washington, D.C. 20036
                                         (202) 822-5100 (phone)
                                         (202) 822-4997 (fax)

Jean Constantine Davis (D.C. Bar No. 250084)
AARP Foundation Litigation
601 E Street NW
Washington, D.C. 20049
Phone: 202-434-2058
Fax:  855-296-1218

*Counsel for Plaintiffs*